# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE AT NASHVILLE
## June 3, 2025 Session

## STATE OF TENNESSEE v. CARLOS OMETRICK STASHER

**Appeal from the Criminal Court for Putnam County**
**No. 22-CR-284      Wesley Thomas Bray, Judge**

_____

## No. M2024-00222-CCA-R3-CD

_____

Defendant, Carlos Ometrick Stasher, was convicted by a Putnam County jury of possession of a firearm by a convicted felon and evading arrest.[1]  The trial court imposed an effective ten-year sentence to be served in confinement.  On appeal, Defendant argues that the trial court erred by denying his motion to suppress the firearm found in his vehicle; that the trial court erred by allowing the State to present evidence of his prior possession of a firearm; and that the trial court erred by allowing the State to impeach him with prior convictions. Upon review of the record, the briefs of the parties, arguments of counsel, and the applicable law, we conclude that the trial court erred by admitting evidence of Defendant's prior possession of a firearm and by allowing the State to impeach Defendant with a prior conviction for possession of a firearm.  However, we conclude that the error was harmless and affirm Defendant's convictions.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and KYLE A. HIXSON, JJ., joined.

Mitchell A. Raines, Assistant Public Defender, Tennessee District Public Defenders Conference, Franklin, Tennessee (on appeal); William F. Roberson, Cookeville, Tennessee (at trial) for the appellant, Carlos Ometrick Stasher.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Hornsby and Garrett D. Ward, Assistant Attorneys General; Bryant C. Dunaway, District Attorney General; and Mark Gore, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Defendant was also charged with and acquitted of resisting arrest.

# OPINION

## Factual and Procedural Background

*Suppression Hearing*

Officer James Cannon of the Cookeville Police Department ("CPD") testified that shortly after midnight on January 1, 2022, he was driving behind a black Chrysler 300 on East Jere Witson Road, and "the vehicle went to turn south onto North Dixie Avenue. And when it did so, the right rear tire of the vehicle drove off the . . . road, causing the vehicle to bounce, which drew my attention." Officer Cannon activated his emergency equipment and stopped the vehicle. He approached the passenger side and observed that Defendant was driving, and there was "an unknown occupant," later identified as Defendant's juvenile son, in the passenger seat.

Defendant immediately asked why he had been stopped, and Officer Cannon informed him of the traffic infraction and then asked for Defendant's driver's license, registration, and proof of insurance, which Defendant provided. Officer Cannon noted that Defendant's pants were down while searching for the documents, exposing his bare buttocks. Defendant's insurance card was expired but he was eventually able to retrieve an updated one on his cell phone. Sergeant Dukes arrived on the scene, and Officer Cannon asked him to request a K-9 Unit because Officer Cannon had prior knowledge of Defendant's drug convictions. He said, "And whenever I had noticed that his pants were abnormally placed on his body, typically I look at that as indicative of, I don't know what's happened, most people don't ride around with their full bare bottom exposed on a car seat." Officer Cannon thought that Defendant may have had concealed something in his clothing or on his person.

Officer Cannon testified that during the four minutes it took for Defendant to find his current insurance card, Officer Cannon noticed that the tint on Defendant's back window appeared "too dark for the State of Tennessee." He retrieved a "tint meter" from his patrol car and asked Defendant to roll down his back window so he could measure the tint. Officer Cannon testified that he was "immediately met with very confrontational argumentative remarks stating that I had no reason to." He tried to reason with Defendant "that if he didn't want to roll this [window] down, he could even roll the front one halfway up, I just needed something to test the window tint." After several requests, Defendant eventually "reluctantly" rolled the window down, and Officer Cannon tested the tint which was eighteen percent,[2] and "the law in the State of Tennessee is that it must be thirty[-]five percent or greater on all windows across the car."

---

[2] The percentage represents the percentage of light that is able to travel through the tint.

Officer Cannon returned to his patrol car to conduct a warrant check and verify Defendant's contact information. Defendant had a "red alert" which meant that he "was a confirmed gang member." Officer Cannon explained that it was his policy to get an accurate address and phone number for each citation that he issued. He noted that Defendant's driver's license showed a different address than the one in the computer system. When Officer Cannon asked Defendant for a correct phone number and asked him to step out of the vehicle for safety reasons, Defendant again became argumentative and refused "any kind of direction." Defendant eventually and reluctantly exited the vehicle, and after multiple requests, Officer Cannon was able to verify Defendant's address. Officer Cannon returned to his patrol car to prepare a warning citation for failure to exercise due care. Officer Cannon also issued Defendant a citation for the window tint violation and was in the process of preparing an affidavit for the citation when Sergeant Fox, who had arrived on the scene, advised him that "his [K-9] had given a positive alert to the presence of the odor of narcotics in the vehicle." Officer Cannon testified that Sergeant Fox advised Defendant of the alert, and Defendant "requested him to run the dog again, saying that we weren't going to search his car."

Sergeant Fox and Officer Cannon eventually searched Defendant's vehicle. Officer Cannon testified that Sergeant Fox leaned into the driver side of the vehicle, leaned back out, and then walked toward Defendant and told him to place his hands behind his back. At that point, Defendant "turned and sprinted away."

Officer Cannon and Sergeant Fox pursued Defendant into a "very dark thicket of brush," and he was taken into custody after Sergeant Fox deployed his "Conductor Electrical Weapon." Defendant initially resisted arrest by placing his hands underneath his chest. Sergeant Fox, Officer Cannon, and Sergeant Dukes resumed their search of Defendant's vehicle and discovered a "loaded Glock [17] handgun stuffed underneath the driver[']s side seat" with a "thirty[-]round" extended magazine. Officer Cannon did not recall Defendant making any admissions as to the weapon.

Officer Cannon's body worn camera recorded his encounter with Defendant. The trial court noted that it had previously reviewed the video, and it was also played during Officer Cannon's cross-examination. Officer Cannon testified that due to prior conversations with other officers during his training, he knew that Defendant had a previous drug and firearm conviction and that Defendant was "a convicted felon for narcotics."

CPD Sergeant Colby Fox testified that he ran his K-9 dog, Kilo, around Defendant's vehicle, and Kilo gave a "final alert" to the driver side of the car for the odor of narcotics. When Sergeant Fox opened the driver side door to search the vehicle, he leaned his head in and saw a firearm "sticking out from under the seat." Sergeant Fox then walked toward

Defendant, and Defendant immediately ran. The gun was later determined to be a Glock 17 9 mm with an extended magazine that held "thirty plus rounds." Sergeant Fox explained that the extended magazine was "much longer than the standard magazine that comes with the firearm, and if you're trying to conceal that under your clothing, you will be able to see it."

At the conclusion of the suppression hearing, the trial court found both Officer Cannon and Sergeant Fox to be credible. The court further found that the stop was "constitutionally valid" and that the stop was reasonable and supported by evidence. The trial court noted that Defendant was the one who "delayed and extended the stop period." The court further concluded that Officer Cannon's actions during the stop were "completely reasonable" and that he moved "as fast as he could have possibly went considering the difficulty that he was facing from [D]efendant." The trial court also found that Kilo's searches were supported by his training and were valid. The court reiterated that Sergeant Fox's testimony was "reliable and credible." Defendant's motion to suppress the firearm was denied.

*Pretrial 609 and 404(b) Hearing*

The State filed a pretrial notice under Tennessee Rule of Evidence 609 of its intent to impeach Defendant if he testified at trial with the following convictions: 2011 Davidson County conviction for possession of cocaine with intent to sell; 2014 Madison County conviction for possession of a firearm by a convicted felon; and 2019 Putnam County conviction for possession of cocaine with intent to sell or deliver. During the hearing on the notice, the State announced that it would not use the 2011 Davidson County drug conviction or the 2014 Madison County firearm conviction for impeachment purposes and would only introduce a certified copy of the judgment for the 2019 Putnam County drug conviction, with an offense date of September 11, 2018, to prove an "essential element" of the possession of a firearm by a convicted felon charge. The State also sought to ask Defendant about the 2019 Putnam County drug conviction on cross-examination if he testified at trial.

At Defendant's request, the trial court ordered the parties to review the 2019 judgment and redact "any extraneous information." The court further ruled that if Defendant testified, the State could question him about the 2019 Putnam County drug conviction. The court noted that there was also "a request under . . . 404(b) that we'll have to get to if the evidence is presented, that they are planning on introducing the evidence through [Detective Brent Anderson]" regarding Defendant's previously having a firearm in his possession to be introduced for "intent purposes, not necessarily to show that he had the firearm [in the offense] that was dismissed during that plea."

The State's pretrial notice of intent to introduce 404(b) evidence indicated that during its case-in-chief, it planned to introduce testimony by Detective Anderson that on September 11, 2018, officers stopped Defendant for speeding, searched his vehicle, and discovered a Glock 19 9 mm handgun with two thirty-round magazines in the console of the vehicle. The State's notice provided that this evidence would be offered not to show action in conformity therewith, but to establish Defendant's intent in this case to possess the Glock 17 and extended magazine found during the traffic stop[3] to rebut the testimony of Denetrick Stasher that the weapon was his and not Defendant's. The State further agreed that it would "not elicit testimony" that Defendant's "possession of the firearm and extended round magazine in 2018 was a criminal offense or a prior bad act." The trial court deferred ruling on the issue until trial.

## Trial

*State's Proof*

The trial testimony of both Officer Cannon and Sergeant Fox was consistent with their testimony at the suppression hearing as set forth above. Concerning his reason for stopping Defendant, Officer Cannon reiterated:

> I had witnessed an infraction where the vehicle in question, [Defendant's] vehicle had turned right onto North Dixie Avenue from South Jer[e], sorry, from West Jer[e] Witson, so it was yielding right. And as it did so, it broke the white fog line and his right rear tire drove completely off the road and I could see the vehicle bounce in front of me.

The traffic infraction was confirmed by the video from Officer Cannon's patrol car which was admitted as an exhibit and played for the jury at trial. Once stopped, Defendant was immediately confrontational with Officer Cannon demanding to know why he had been stopped.[4] Officer Cannon explained the traffic offense to Defendant and noted that because "it was New Years Eve, it could be a possible DUI, because there are many drunk drivers on the road at all times, whether we find them all or not."

Officer Cannon further testified:

---

[3] During this September 11, 2018 stop, officers also found cocaine in Defendant's vehicle, resulting in the indictment to which Defendant plead guilty in the 2019 drug conviction.

[4] As noted above, Defendant's juvenile son was also a passenger in the vehicle and was attended to by another officer after he was removed from the vehicle during the stop.

[W]hile I was asking [Defendant] for his license and insurance and registration, I took note of the fact that as I was speaking to him, his pants were pulled down, not in a normal manner, cause I've seen people that maybe wear their pants a little lower, but it was that his underwear were also pulled down, completely exposing his buttocks on the seat.

Officer Cannon testified that in his experience "whenever you see abnormalities like that with clothing being worn in a different way than the average everyday person will wear it, my first thought is why is it like that and are they trying to conceal something." Defendant told Officer Cannon that he was "too worried about the wrong thing." Officer Cannon testified that he also noticed that the window tint on Defendant's vehicle appeared to be too dark and in violation of the window tint law which he later confirmed with his tint meter.

Defendant gave Officer Cannon his driver's license, registration, and insurance card but, he continued to be argumentative and refused to consent to a search of his vehicle. When Officer Cannon asked Defendant to step out of the vehicle for safety reasons, Defendant argued with Officer Cannon but eventually complied. Officer Cannon was aware that Defendant was a "prior convicted drug felon." Officer Cannon requested that Sergeant Fox and his K-9 Unit respond to the scene. Officer Cannon returned to his patrol car and began preparing a warning citation for Defendant's failure to exercise due care and a citation for the window tint violation. When Sergeant Fox arrived, his dog, Kilo, gave a positive alert to the odor of narcotics in Defendant's vehicle. Officer Cannon advised Defendant of the alert, and Defendant immediately requested that they "run the dog again." Officer Cannon refused, and Sergeant Fox began searching the vehicle. As Officer Cannon approached the passenger side to search, Sergeant Fox exited the vehicle from the driver side, walked toward Defendant, and instructed him to place his hands behind his back. At that point, Defendant "took off in a sprint behind him."

Officer Cannon and Sergeant Fox began chasing Defendant. Officer Cannon deployed his taser and attempted to tase Defendant, but the probes missed. Defendant then "jumped head[-]first" into a thick briar bush. He attempted to crawl further into the bush but Officer Cannon and Sergeant Fox "were able to catch up to him relatively quickly considering he was immobilized for the most part." Defendant then placed his hands underneath his chest to prevent being handcuffed. He also used his feet to shove the officers off him. Sergeant Fox deployed his taser and performed a "drive stun" after the two probes missed, and Defendant was eventually taken into custody. A "Glock 17 Generation 5 9 mm handgun" with one round in the chamber and a "thirty plus round magazine sticking out of the handgrip of the firearm" was found protruding from underneath the driver seat of Defendant's car.

On cross-examination, Officer Cannon agreed that there were no indicators that Defendant was under the influence of any intoxicant. Officer Cannon noted that the gun found in Defendant's vehicle could be seen "as soon as you enter the vehicle" and it was "in very clear light." On redirect examination, Officer Cannon testified that Defendant accused Officer Cannon or Sergeant Fox of "planting" something in his car. Defendant also denied that he was a convicted felon. Officer Cannon testified that Defendant had a prior felony conviction for possession of less than 0.5 grams of cocaine with intent to sell, and he identified a certified copy of the judgment for the 2019 Putnam County drug conviction which was entered as an exhibit. Defense counsel did not object to the introduction of the judgment.

Sergeant Fox testified that he noticed the gun as soon as he "stuck [his] head inside the vehicle." He said that the gun's extended magazine, which held thirty rounds of ammunition, and bottom of the pistol grip were "sticking out from under the seat." Sergeant Fox also noted that the gun was not "concealed at all really" and "easily accessible."

*Jury Out Hearing – Rule 609*

After the State rested its case, the trial court held a jury-out hearing during which Defendant indicated his intent to testify. The trial court reiterated its prior ruling on the Rule 609 issue and confirmed that the parties had come to an "agreement" that the State would only question Defendant for impeachment purposes about the 2019 Putnam County drug conviction that had already been introduced. The court further said: "And there [are] some limiting agreements that we had, basically you're going to ask him were you convicted and he's going to say what he says and depending upon that answer determines how much further you get to go, is that right?" Both the prosecutor and defense counsel answered affirmatively.

*Defendant's Proof*

Defendant's brother, Denetrick Stasher,[5] testified that he had lived in Mississippi for the past forty years. He claimed that he had borrowed Defendant's car for several months to use in Mississippi because he had not made the payments on his car and had left it in Tennessee. He also claimed that the gun found in Defendant's car belonged to him. Denetrick testified: "When I travel, I travel with a firearm. I had it under the seat of the vehicle." He claimed that he arrived at Defendant's residence just before midnight on

---

[5] Because Defendant and his brother share the same last name, for clarity, we will refer to his brother by his first name. No disrespect is intended.

December 31, 2021, and because his stomach was hurting, he parked the vehicle, left everything inside, and went into the house to use the restroom. Denetrick testified that Defendant and Defendant's son then got into the vehicle and drove to the store to buy cigarettes. Denetrick did not tell Defendant about the gun and claimed that it was not protruding from underneath the seat when he got out of the car. He said that he originally paid $600 for the gun which came with a ten-round .40 caliber magazine, and he later bought the thirty-round clip and an infrared light for the weapon. Denetrick agreed that he identified the weapon as a .40 caliber weapon, but the officers identified it as a 9 mm.

Defendant testified that Officer Cannon stopped him for "a possible DUI." Defendant denied that he had consumed alcohol or taken illegal drugs. When asked if he had "done any bad driving," Defendant replied:

> No, not to my knowledge. It's like now I ride a car with rims on it. Sometimes if you just make a, just a regular turn, like if you're on a curve, sometimes your rims screw up, so you really got to turn wide. When I made a regular turn, so my back tire kind of slightly twisted, it didn't leave the road. It's like it crossed the line like it looks on the video.

Defendant testified that he did not feel any bounce inside the car when he turned. He agreed that he provided Officer Cannon with a valid driver's license, registration, and insurance card. Defendant further agreed that the window tint violation was valid and that he would have pled guilty to that charge.

Defendant testified that he watched Sergeant Fox run Kilo around Defendant's vehicle and that Defendant only saw the dog "jumping all on it scratching it up, that about all he do[es]. He do[es] it every time, it's like the third time." Defendant testified that he had never had any narcotics in the vehicle. He further testified:

> I'm going to paint this picture for you all. You know, like since I've been in Cookeville, I've been racially profiled and all this, so it's been boiled down. I have so many civil complaints, but it's strange how the court presented all the evidence to make me look bad, but they ain't presented evidence to make me look good. Yes, I had my problems in the past, you know, but we all got past, you know, we just working forward to change. But how can you change cause these people ain't allowing you to change. They study trying to use the past or the color of my skin or say the tint of my car.

Defendant claimed that he ran from the officers to protect his son because Officer Cannon had asked a lot of questions and there were fireworks going off, and the news

shows "young black males dying every day." He also noted that the Cookeville Police Department had "been sued before [for] planting drugs on a black male."

Throughout his direct examination, Defendant claimed both that the officers had planted something in his car and that the gun in his car belonged to his brother. He testified that he did not see the gun when he got into the vehicle and denied that the gun was visible because "there ain't no way I would have missed that." He said that he would not have gotten into the vehicle if he had seen the weapon, particularly given "[t]he way [he had] been racially profiled" in Cookeville.

*Jury-Out Hearing – Rule 404(b)*

After Defendant's direct examination, the State requested a jury-out hearing during which it asked to introduce during cross-examination, evidence of Defendant's prior possession of a similar weapon, a Glock 9 mm handgun, with two extended round magazines discovered during the traffic stop underlying Defendant's 2019 Putnam County drug conviction. The State argued that Defendant "opened the door" to such evidence by accusing the officers of racially profiling him; claiming that they "won't allow him to change"; and by testifying that he had been through "these things before."[6] The State also argued that the two convictions it had previously agreed not to introduce should now be allowed under both Rules 609 and 404(b). The State argued:

> Well, we're offering it for impeachment, Judge, but the issue in this case is the defendant has made a claim of mistake or accident or that he didn't have any intent to possess the firearm, either actually or constructively. He put his brother on the witness stand to say that he purchased the firearm and it was his firearm. So the issue before the jury is ["]was it a mistake or was it his intent.["]
>
> And Judge, what I submit as it relates to the prior incident from 2018, the fact that he is in possession of a very similar handgun, almost identical. Also in possession of almost identical extended round magazines and that we've already heard testimony from one of the officers that it is unusual to find extended round magazines.
>
> So again, Judge, I would submit that that's the material issue. I believe I can ask the defendant these questions. Maybe his response rises to the level of

---

[6] The State also argued that Defendant opened the door to allow the introduction of Defendant's gang affiliation. However, from the record is does not appear that the trial court addressed Defendant's gang affiliation, and it was not admitted at trial.

- 9 -

clear and convincing evidence, but I think I should be allowed to ask him as it relates to 404(b). As it relates to 609, Judge, this defendant again has taken the witness stand and has blamed these officer[s], accused them of racial profiling. And, and this is I guess more poignant to 609, Judge, he says I have been through these things before.

Defendant argued that his prior possession of a similar weapon and extended magazine discovered during the 2018 traffic stop was not a conviction, "no defenses have been raised. And I don't believe that [D]efendant has to testify about that, in fact he may have a constitutional right not to testify about it" because there had never been an adjudication. He further argued that the "conviction and that information, that 404(b) information is three years and three months old. . . . That's too old." Defense counsel asserted that Defendant had not opened to the door to the evidence "given the extreme prejudice he might suffer" and that the probative value was "certainly" not outweighed by the prejudicial effect as there was "no higher potential prejudice in the world" than to admit evidence involving prior possession of a handgun in a trial in which Defendant was charged with illegal possession of a handgun.

The trial court then noted that Defendant had taken the "opportunity to take shots at the issues that he has with Cookeville City" during his testimony and pointed out that the charge was adjudicated when it was dismissed as a condition of Defendant's guilty plea to the 2019 drug conviction. The trial court also noted that the jury already knew that Defendant was a convicted felon due to the agreed-upon introduction of his 2019 Putnam County drug conviction and that the jury heard Denetrick testify that the gun was a Glock 40. The trial court also pointed out that the 2018 gun possession involved a Glock 19 and this case involved a Glock 17. Defendant then asserted that the two cases were "totally different" in that the guns were different, there were no drugs present in this case, and the firearm in the 2018 incident was in the center console and not underneath the seat. The trial court concluded:

> 404(b) says that we have to have a jury out hearing. We're having that. The court must determine a material issue exists other than a conduct conforming with a character trait. I do find there is an issue which leads to intent. The prior conviction, the testimony of the defendant here today, I find the proof of that other crime or wrong by clear and convincing evidence. I do not however think that the danger of prejudice outweighs its probative value. And that is based upon his testimony here today. I think he's opened the

- 10 -

door to these items. You're going to be able to ask him under 609[7] and under 404(b). I'm going to let that in based on his testimony.

*Defendant's Cross-Examination*

On cross-examination, Defendant testified that his tire did not drive outside the line, "it touched the line." When the State asked Defendant to identify the certified judgment from his 2019 drug conviction, Defendant said, "That ain't one on me, it ain't the charge that don't claim to be." He then said that the charge was "something else" and that he did not know what his "prosecution has to do with today's charge." When the trial court admonished Defendant to answer the State's questions, Defendant finally admitted that the judgment was his and that he was a "convicted drug felon" at the time of the present offenses.

Defendant agreed that his pants were pulled down when he was stopped by Officer Cannon because it was a "style" to wear his pants "below our butt a little bit[.]" He disagreed with Officer Cannon's testimony that his buttocks were exposed noting that he was sitting down in the car. Defendant agreed that he ran from the officers and that he was already running when they told him to stop. He said that he ran because he was "nervous" and there were fireworks going off. Defendant claimed that he left his son behind to "[keep] all the focus" on himself and away from his son, and he "brought the danger" with him. He reiterated that he did not know the gun was in his car. Defendant agreed that contrary to his statement after his arrest, the police did not "plant" the gun in his car. Defendant again noted that the CPD had been sued for "planting drugs on a black man." Regarding why he accused officers of planting the gun in his car, Defendant stated:

> I made the statement, what I really made the statement because I've been going through this since I've been here. I've been illegal stop, illegal search, let a dog destroy my vehicle, scratching my vehicle. I've got many videos, plenty of videos, I've . . . made multiple complaints, but ain't none of that being presented. You know, I've been violated and the Cookeville City Police ain't doing nothing about it. They's violations that continue to take place. I've been, I've been putting complaints in.

Defendant agreed that during the traffic stop that led to his 2019 Putnam County drug conviction, he had a gun in the console of the vehicle. Defendant initially claimed not to remember the type of firearm or magazines he had with it. However, he later agreed

---

[7] It appears from our reading of the transcript that the trial court's reference to Rule 609 refers to the State's request to question Defendant about his 2014 Madison County firearm conviction and his 2019 Putnam County drug conviction, not testimony that he possessed a firearm and two extended magazines during the 2018 traffic stop underlying his 2019 drug conviction.

- 11 -

that he "thought" he remembered that it was a Glock 9 mm with two extended thirty-round magazines. Defendant also admitted that he had a 2014 conviction from Madison County for possession of a firearm by a convicted felon.

*State's Rebuttal Proof*

CPD Detective Sergeant Brent Anderson,[8] who was assigned to the drug unit, testified that on September 11, 2018, he responded to a traffic stop where Defendant had been pulled over by another officer. Defendant's vehicle had been searched prior to Sergeant Anderson's arrival, and he observed a Glock 19 with two thirty-round extended magazines found in the console of the vehicle. He said that a Glock 19 and a Glock 17 are both 9 mm guns. He did not know whether Defendant had been convicted of gun possession in that case. He noted that the officer who was primarily responsible for prosecuting that case had been terminated from the CPD.

*Additional Rule 609 Findings*

While the jury was deliberating, the trial court more fully addressed its ruling concerning Rule 609 evidence on the record. The court stated that while it had thoroughly addressed the Rule 404(b) issue, it had not properly addressed its "ruling on the 609 issue" and wanted to "go back and do that now." The trial court then reviewed the requirements to admit prior convictions under Rule 609 and stated the following concerning Defendant's 2014 Madison County firearm conviction:

> All right, so it's been less than ten years on the 609 evidence that I allowed you to talk about. There was some question about his acceptance when he was cross[-]examined. I do find that the impeaching conviction was relevant to the credibility of the defendant. I find that the probative value for credibility outweighed any unfair prejudicial effect under 609. And matter of fact, credibility was a major issue in this case and thus the probative value of the convictions for credibility was increased and therefore outweighed any prejudicial effect.

Based on the above proof, the jury convicted Defendant as charged of possession of a firearm by a convicted felon and evading arrest but acquitted him of resisting arrest. The trial court imposed an effective ten-year sentence. Defendant filed a timely motion for new trial, which was denied. Defendant's timely appeal is now before this court.

---

[8] At the time of trial, Detective Anderson had been promoted to Lieutenant.

**Analysis**

I.  Denial of Motion to Suppress

Defendant argues that because the totality of the circumstances regarding the search of his car did not establish probable cause, the trial court erred when it denied his motion to suppress the gun found in his vehicle.  The State responds that the totality of the circumstances established probable cause to search the vehicle.

"[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise."  *State v. Green*, 697 S.W.3d 634, 640 (Tenn. 2024) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)).  Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact."  *Id.* (quoting *Odom*, 928 S.W.2d at 23).  However, "the application of the law to the facts is a question of law that appellate courts review de novo with no presumption of correctness."  *Id.* (quoting *State v. Bell*, 429 S.W.3d 524, 529 (Tenn. 2014)); *State v. Echols*, 382 S.W.3d 266, 277 (Tenn. 2012).  The party prevailing at the suppression hearing is afforded the "strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence."  *State v. McKinney*, 669 S.W.3d 753, 764 (Tenn. 2023) (quoting *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010)).  Appellate courts may consider the proof adduced both at the suppression hearing and at trial in reviewing the correctness of a trial court's ruling on a pretrial motion to suppress.  *Id.*

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect citizens from unreasonable searches and seizures.  U.S. CONST. amend. IV; TENN. CONST. art. 1, § 7.  It is well established that Article 1, section 7, is identical in intent and purpose to the Fourth Amendment.  *State v. Reynolds*, 504 S.W.3d 283, 312-13 (Tenn. 2016); *State v. McCormick*, 494 S.W.3d 673, 683-84 (Tenn. 2016).  "[A] warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement."  *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

"The 'automobile exception' to the warrant requirement permits an officer to search an automobile if the officer has probable cause to believe that the automobile contains contraband."  *State v. Saine*, 297 S.W.3d 199, 207 (Tenn. 2009); *see Carroll v. United States*, 267 U.S. 132, 149 (1925).  The rationale for the automobile exception is two-fold: (1) the impracticability of obtaining a search warrant in light of the inherent mobility of an automobile; and (2) the reduced expectation of privacy with respect to one's automobile.

- 13 -

*California v. Carney*, 471 U.S. 386, 390-93 (1985); *South Dakota v. Opperman*, 428 U.S. 364, 367 (1976). If the police have probable cause to believe that an automobile contains contraband, the officers may either seize the vehicle and then obtain a warrant, or they may search the vehicle immediately. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970). "[T]he right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law." *Reagan v. State*, 525 S.W.2d 683, 686 (Tenn. Crim. App. 1974) (citing *Maroney*, 399 U.S. at 49). "Given probable cause to search, either course is reasonable under the Fourth Amendment." *Maroney*, 399 U.S. at 52.

"Probable cause is more than a mere suspicion but less than absolute certainty." *State v. Tuttle*, 515 S.W.3d 282, 299, 300 (Tenn. 2017) (quoting *Reynolds*, 504 S.W.3d at 300). Probable cause determinations are not technical, but instead, "are extremely fact-dependent." *Id.* (quoting *Bell*, 429 S.W.3d at 534). Indeed, the probabilities involved in making a probable cause determination concern "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)).

Our supreme court recently held that "a positive alert from a drug-sniffing canine" should be "considered in a totality-of-the-circumstances analysis" and may "contribute to a probable cause determination." *Green*, 697 S.W.3d at 642; *see State v. Green*, M2022-00899-CCA-R3-CD, 2023 WL 3944057, at *3 (Tenn. Crim. App. June 12, 2023) (finding the legal analysis the same whether the smell of marijuana was detected by an officer or a drug canine), *aff'd*, 697 S.W.3d 634. The court pointed out that these alerts give "rise to a high probability that a controlled substance is in the car." *Green*, 697 S.W.3d at 644 (internal quotations and alterations omitted). The court concluded that the "ultimate question" is "whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Id.* (quoting *Florida v. Harris*, 568 U.S. 237, 248 (2013)).

Defendant in this case does not challenge the initial stop of his vehicle by Officer Cannon for a traffic infraction. Instead, he contends that there was no probable cause to search his vehicle based upon the totality of the circumstances. However, the proof presented at the suppression hearing shows that Officer Cannon had probable cause to search Defendant's vehicle. Officer Cannon observed one of Defendant's tires drive off the road causing the vehicle to "bounce" while Defendant was making a turn. The car then continued to swerve in the road. Because it was New Year's Eve, Officer Cannon was concerned about a possible intoxicated driver. Officer Cannon's dashcam video was consistent with his testimony. When Officer Cannon stopped Defendant and approached

the vehicle, Defendant was immediately aggressive and confrontational as evidenced in the footage from Officer Cannon's body camera.

Officer Cannon testified that when he observed that Defendant's pants were pulled down exposing his bare buttocks on the seat, he suspected that Defendant might be attempting to conceal something. Sergeant Fox then arrived on the scene with Kilo, a dog trained to detect methamphetamine, heroin, cocaine, and marijuana, who alerted to the vehicle indicating that an odor of narcotics was present. When "viewed through the lens of common sense," these facts are sufficient to "make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Green*, 697 S.W.3d at 644. Defendant complains that the trial court's failure to "consider the totality of the circumstances" was an abuse of discretion; however, the proper standard of review for probable cause determinations is de novo. *See Bell*, 429 S.W.3d at 529. We conclude that the totality of the circumstances supports probable cause for the search of Defendant's car. He is not entitled to relief on this issue.

## II. Admission of Prior Bad Acts

Defendant argues that the trial court erred by allowing three pieces of evidence - the 2014 Madison County firearm conviction, the 2019 Putnam County drug conviction, and the 2018 firearm possession that occurred during the traffic stop which ultimately led to the 2019 Putnam County drug conviction - to be admitted under Tennessee Rules of Evidence 404(b), 609, and 608. Defendant was also convicted of evading arrest and he does not challenge that conviction.

Defendant agreed to the admission of the 2019 Putnam County drug conviction to establish the prior felony for the charge of possession of a firearm by a convicted felon. A redacted copy of the judgment of conviction was entered by agreement as Exhibit 3 in the trial. Thus, Defendant has waived any claim that the admission of the 2019 Putnam County drug conviction was improperly admitted.

While Defendant argues that the other two prior bad acts were improperly admitted under both Rules of Evidence, the record shows that the trial court admitted Defendant's 2018 firearm possession under Rule 404(b) and admitted the 2014 Madison County firearm conviction under Rule 609.

### Rule 404(b) Admission of Defendant's 2018 Possession of a Firearm

Defendant contends that the trial court erred by allowing the State to introduce evidence that he had been "charged but not convicted, of possession of a firearm" from the traffic stop underlying his 2019 Putnam County drug conviction because proof of the

proposed evidence was not clear and convincing. Defendant also claims that the trial court erroneously concluded that the prejudicial effect of the evidence "was outweighed by its probative value." The State argues that the trial court substantially complied with the procedures of Rule 404(b) and properly admitted the evidence.

It is well-established precedent "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod*, 937 S.W.2d 867, 871 (Tenn. 1996). The general rule is that evidence of a defendant's uncharged criminal conduct is inadmissible, especially when previous crimes or acts are of the same character as the charged offense, because such evidence is irrelevant and "invites the finder of fact to infer guilt from propensity." *State v. Hallock*, 875 S.W.2d 285, 290 (Tenn. Crim. App. 1993). Tennessee Rule of Evidence 404(b) permits the admission of evidence of uncharged criminal conduct if the evidence is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and the probative value outweighs the danger of unfair prejudice. Tenn. R. Evid. 404(b) Advisory Comm'n Cmt.; *see State v. Parton*, 694 S.W.2d 299, 303 (Tenn. 1985); *State v. Hooten*, 735 S.W.2d 823, 824 (Tenn. Crim. App. 1987). However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b).

Before admitting evidence under Rule 404(b), the rule provides that (1) upon request, the court must hold a hearing outside the jury's presence; (2) the court must determine that the evidence is probative on a material issue and must, if requested, state on the record the material issue and the reasons for admitting or excluding the evidence; (3) the court must find proof of the other crime, wrong, or act to be clear and convincing; and (4) the court must exclude the evidence if the danger of unfair prejudice outweighs its probative value. Tenn. R. Evid. 404(b).

In reviewing a trial court's decision to admit or exclude evidence under Rule 404, an appellate court may disturb the trial court's ruling only if there has been an abuse of discretion. *State v. Thacker*, 164 S.W.3d 208, 240 (Tenn. 2005). The trial court's determination is entitled to deference when it has substantially complied with the procedural requisites of Rule 404(b). *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn. 1997). If, however, the strict requirements of the rule are not substantially observed, the reviewing court gives the trial court's decision no deference, and our standard of review is de novo. *Id.*

Following Defendant's testimony, the State asked for a jury-out hearing pursuant to its prior notice to introduce the evidence of Defendant's prior firearm possession. During the hearing, the trial court concluded that the evidence was relevant to a material issue other than Defendant's character, namely his intent to possess the weapon, which the State was required to prove at trial, and the absence of accident or mistake. *See State v. Berry*, 141 S.W.3d 549, 582 (Tenn. 2004) (noting that "for other purposes" includes proof of intent and absence of mistake or accident). The trial court pointed out that Defendant had opened the door to this evidence by testifying during direct examination that the gun belonged to his brother, that he did not know it was in his car, and that the only reason he was stopped was because the police were racially profiling him. Defendant also testified that while he had problems in the past, "these people" would not allow him to change. Defendant also specifically denied that the gun was visible because "there ain't no way I would have missed that." He said that had he seen the weapon, he would not have gotten into the car based on "[t]he way [he had] been racially profiled" in Cookeville. However, Sergeant Fox testified that the firearm was not concealed and was clearly visible in the car. The photograph taken from the body camera video was consistent with Sergeant Fox's testimony.

The trial court further found that there was clear and convincing evidence of Defendant's prior firearm possession:

> Well I have conceded minimally that the firearm causes some problems. You know, at our probation violation hearing, I didn't find him in violation of his probation over a weapon, I found him in violation of his probation for evading and resisting. Because the proof and the argument as to the firearm was such that I didn't have to address it, because I had enough to sentence him to what I did when he was on probation at the time this happened instead of revoking him to serve his sentence. I didn't take that into consideration. All I took into consideration was the evading and resisting so that you all could [flesh] out the firearm like you're doing today.

Defense counsel then argued that the evidence of the firearm possession was not clear and convincing. He further argued:

> It's an offense that wasn't, there's no conviction, there's no certified conviction. The defendants of course are not allowed to, their confession, if you will, is not sufficient evidence generally of the proof of some kind of a crime. And so I don't know how it could come in through him as the witness. I don't know how, 404(b) evidence in my opinion is supposed to be presented by some other witness anyway, not the defendant.

- 17 -

Finally, the court acknowledged the prejudicial effect the evidence could have, but determined that because of Defendant's testimony, the probative value of the evidence was not outweighed by the danger of unfair prejudice.

On appeal, Defendant argues that the trial court failed to substantially comply with Rule 404(b) when it found proof of the 2018 firearm possession by clear and convincing evidence. He points out that the State did not present any proof at the hearing concerning the prior bad act and called Detective Anderson only as a rebuttal witness after Defendant's cross-examination to testify as to the underlying facts. The trial court appeared to have relied on its pretrial knowledge and information from the probation violation hearing in Defendant's 2019 Putnam County drug conviction case. However, we conclude that this evidence does not meet the clear and convincing standard. There was no proof presented at the hearing and the trial court did not explain how it found Defendant's prior possession of a firearm to have been proved by clear and convincing evidence. Thus, the trial court failed to substantially comply with the procedure of Rule 404(b). *See State v. Sexton*, 368 S.W.3d 371, 402-04 (Tenn. 2012) (finding that the trial court improperly relied upon the transcript of the preliminary hearing and hearsay testimony rather than the witnesses with first-hand knowledge in admitting evidence of defendant's prior sexual abuse of the murdered victims' minor daughter under 404(b)). Therefore, the trial court's ruling is not entitled to deference on appeal.

Under de novo review, because there was no evidence presented at the 404(b) hearing, and there is no evidence in the record about the facts of Defendant's 2018 firearm possession, proof of the incident was not clear and convincing. The only evidence of this incident was presented after the trial court ruled that it was admissible. Thus, the evidence should have been excluded under Rule 404(b). However, any error in admitting this evidence is harmless, as discussed below.

### Rule 609 Admission of Defendant's 2014 Madison County Firearm Conviction

Defendant argues that the trial court erred by allowing the State to introduce evidence of his 2014 Madison County firearm conviction. The State responds that the convictions were properly admitted.

Rule 609(a)(3) of the Tennessee Rules of Evidence allows for the admission of a prior conviction to impeach the credibility of a defendant testifying at trial. Prior to admission, the trial court is required to determine whether "the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." Tenn. R. Evid. 609(a)(3). This court will reverse a trial court's decision only if the trial court abused its discretion. *State v. Williamson*, 919 S.W.2d 69, 78 (Tenn. Crim. App. 1995).

When determining whether the probative value of a prior conviction on the issue of credibility outweighs its unfair prejudicial effect on the substantive issues, a trial court should consider (1) the relevance of the impeaching conviction with respect to credibility, and (2) the similarity between the crime in question and the underlying impeaching conviction. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). A prior conviction involving the same or similar crime for which the defendant is being tried does not automatically require its exclusion. *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997); *State v. Miller*, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987). But, if "the prior conviction and instant offense are similar in nature the possible prejudicial effect increases greatly and should be more carefully scrutinized." *Long v. State*, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980). While a felony "need not involve dishonesty" to be admissible for impeachment, our supreme court has "rejected a per se rule that permits impeachment by any and all felony convictions." *Waller*, 118 S.W.3d at 371. Instead, "[a] prior felony conviction still must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issues of the case." *Id.* "To determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or false statement." *Id.*

In this case, the State gave pretrial notice that if Defendant testified, the State intended to use his 2014 Madison County firearm conviction for impeachment. The trial court ultimately concluded that the conviction was less than ten years old and relevant to Defendant's credibility which he had squarely put at issue during his testimony. The court further found that the probative value for credibility outweighed any unfair prejudicial effect under 609. The court said: "And matter of fact, credibility was a major issue in this case and thus the probative value of the convictions for credibility was increased and therefore outweighed any prejudicial effect." The trial court did not consider whether the 2014 conviction was a crime of dishonesty or false statement as it related to Defendant's credibility.

At the time of the offense, Tennessee Code Annotated section 39-17-1307(c)(1) provided: "A person commits an offense who possesses a handgun and has been convicted of a felony." (effective July 1, 2010, to June 30, 2012). Possession of a firearm by a convicted felon is not a crime involving dishonesty or false statement, and its probative value is very limited in terms of the balancing test. Because the probative value of the 2014 Madison County firearm conviction is very limited, and because the conviction is identical to that for which Defendant was on trial, we conclude that the trial court abused its discretion by allowing the State to question Defendant about the conviction at trial.

- 19 -

**Rule 608 – Evidence of Character and Conduct of Witness**

Defendant also argues that Sergeant Anderson's rebuttal testimony concerning Defendant's 2018 firearm possession during the stop underlying his 2019 Putnam County drug conviction was improper extrinsic evidence and should have been excluded under Tennessee Rule of Evidence 608. However, the trial court admitted Sergeant Anderson's testimony under Rule 404(b) and not under Rule 608. At trial, Defendant did not object to Sergeant Anderson's testimony under Rule 608 or invoke the rule in any way during the jury-out hearing on this matter. He first raised the issue in his motion for new trial. It is well-settled that "a party is bound by the ground asserted when making an objection" and "cannot assert a new or different theory to support the objection in the motion for a new trial or in the appellate court." *State v. Adkisson*, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994). "When, as here, a party abandons the ground asserted when the objection was made and asserts completely different grounds in the motion for a new trial and in this [c]ourt, the party waives the issue." *Id.* at 635. Therefore, this issue is waived.

**Harmless Error**

Even though we have found error in the trial court's admission of evidence under Rules 404(b) and 609, because of the overwhelming proof in this case, we find any error to be harmless. *State v. Rodriguez*, 254 S.W.3d 361, 372 (Tenn. 2008) ("The greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial."); Tenn. R. Evid. 103(a) (no error committed in rulings on admitting evidence "unless a substantial right of the party is affected"). It is unlikely that the errors affected the verdict.

Ultimately, all the properly admitted evidence of Defendant's guilt shows that the errors in admitting the 2014 Madison County firearm conviction and the 2018 firearm possession did not undermine the fairness of the trial. *Cf. Rodriguez*, 254 S.W.3d at 377-78 (finding that admission of evidence that the defendant watched child pornography in prosecution for child rape was not harmless because "the outcome of the prosecution hinged on the jury's assessment of the credibility of the two children and of" the defendant). Defendant agreed to the admission of his 2019 Putnam County drug conviction which served to establish the element that he was a prior convicted felon. The additional proof showed that when Defendant was stopped for a traffic violation, he was confrontational, defiant and argumentative with officers. After the trained canine made a positive alert and Defendant exited his vehicle, officers began to search the vehicle. Sergeant Fox testified that he clearly saw the gun protruding from under the driver's seat where Defendant had been sitting. Possession of a firearm can be either actual or constructive. *See State v. Fayne*, 451 S.W.3d 362, 370 (Tenn. 2014). "[A]ctual possession refers to physical control

over an item." *Id.* To find constructive possession, the State must show that the accused knowingly had the power and intention at a given time to exercise dominion and control over the object directly or through others. *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). "In other words, 'constructive possession is the ability to reduce an object to actual possession.'" *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) (quoting *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)).

In this case, the evidence was sufficient to show that Defendant had constructive possession of the gun. *See State v. Robertson*, No. W2020-00365-CCA-R3-CD, 2021 WL 2189998, at *5 (Tenn. Crim. App. May 28, 2021) (finding the evidence sufficient to support that the defendant possessed a firearm found on the driver side floorboard of his truck despite a witness testifying that "the gun was [the witness's] firearm, that he accidentally left the gun under the [defendant]'s driver's seat when he drove the truck to the store, and that the [defendant] did not know about the gun"). It was not concealed and was easily accessible by Defendant. *See State v. Cheairs*, No. W2024-00312-CCA-R3-CD, 2025 WL 407435, at *11-12 (Tenn. Crim. App. Feb. 5, 2025) (affirming possession of a firearm by convicted felon where the firearm was found under the front passenger seat in a vehicle and the defendant was the driver and sole occupant of the vehicle), *perm. app. denied* (Tenn. June 23, 2025).

When Sergeant Fox attempted to arrest Defendant, Defendant fled. All of Defendant's actions were captured on the officers' body camera and the videos were shown to the jury along with a screenshot from the body camera video of the placement of the gun in the vehicle under Defendant's seat.

The trial court also gave the jury a limiting instruction regarding Defendant's prior convictions: "If you find from the proof that the defendant has been convicted of other crimes or another crime than that for which he is presently on trial, you may not consider such evidence as proof of his disposition to commit the crime for which he is on trial." Jurors are presumed to follow the instructions of the trial court. *State v. Inlow*, 52 S.W.3d 101, 106 (Tenn. Crim. App. 2000).[9] Defendant is not entitled to relief on this issue.

---

[9] To the extent Defendant argues that the trial court erred by admitting evidence concerning his firearm possession during the stop underlying his 2019 cocaine conviction under Rule 609, we find that this evidence was admitted under Rule 404(b) as discussed above.

## CONCLUSION

We conclude that the trial court erred by allowing the State to introduce evidence of Defendant's 2018 firearm possession and Defendant's 2014 Madison County firearm conviction. However, because the errors were harmless, we affirm Defendant's convictions.


s/ *Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE